IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ISAIAH JAMAAL FIELDS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | C.A. No. 18-388 (MN) |
| ) | |
| TRUMAN MEARS, Warden, and ) | |
| ATTORNEY GENERAL OF THE STATE ) | |
| OF DELAWARE, ) | |
| ) | |
| Respondents.[1] ) | |

## MEMORANDUM OPINION

Isaiah Jamaal Fields – *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorneys for Respondents.

February 24, 2021
Wilmington, Delaware

---

[1]  Warden Truman Mears has replaced former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Isaiah Jamaal Fields ("Petitioner"). (D.I. 1). The State filed an Answer in opposition. (D.I. 14). For the reasons discussed, the Court will deny the Petition as barred by the one-year limitations period prescribed in 28 U.S.C. § 2244.

## I. BACKGROUND

"[D]uring the course of a narcotics investigation conducted by the Governor's Task Force in 2015, the Delaware State Police received information that [Petitioner], a Level II probationer, was transporting heroin in and around the Millsboro area in Delaware." *Fields v. State*, 172 A.2d 884 (Table), 2017 WL 4607424, at *1 (Del. Oct. 12, 2017). In August 2015, Petitioner was charged by information with aggravated possession of heroin (Tier 5), drug dealing (Tier 4), possession of drug paraphernalia (baggies), and driving while suspended or revoked. (D.I. 12-1 at 1; D.I. 14 at 1); *see Fields*, 2017 WL 4607424, at *1. On October 19, 2015, Petitioner pled guilty in the Delaware Superior Court to drug dealing in heroin (Tier 4) and forfeited the items seized, in exchange for which the State *nolle prossed* the remaining charges and recommended six years of unsuspended Level V incarceration. (D.I. 12-3 at 2-5). The Superior Court immediately sentenced Petitioner to twenty-five years at Level V, suspended after six years for eighteen months of Level III probation. (D.I. 12-4 at 26-27). Petitioner did not appeal.

On January 11, 2016, Petitioner filed a motion for sentence modification, which the Superior Court denied on February 8, 2016. (D.I. 12-1 at1, Entry Nos. 8, 9). On October 25, 2016, Petitioner filed a *pro se* motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 12-1 at 1-2; D.I. 12-3 at 23-27; D.I. 12-4 at 30-33). The Superior Court summarily dismissed the Rule 61 motion on May 18, 2017. (D.I. 12-3 at 15-22). The

Delaware Supreme Court affirmed that decision on October 12, 2017. *See Fields*, 2017 WL 4607424, at *3.

Petitioner filed the instant habeas Petition in March of 2018, asserting the following six grounds for relief: (1) his Fourth Amendment rights were violated when police searched his vehicle following the traffic violation (D.I. 1 at 5; D.I. 3 at 6-9) (Claim 1); (2) there was no probable cause to arrest him because the affidavit of probable cause to obtain the warrant for his arrest was incomplete (D.I. 1 at 7; D.I. 3 at 9) (Claim 2); (3) his Fourth Amendment rights were violated because the administrative warrant and its accompanying documents were incomplete (D.I. 1 at 8; D.I. 3 at 9-11) (Claim 3); (4) defense counsel provided ineffective assistance by: (a) failing to make a "reasonable investigation as to the charges against [Petitioner];" (b) failing to file a motion to suppress; (c) failing to challenge the information from the confidential informant; (d) failing to raise issues regarding the violation of Petitioner's Fourth Amendment rights; (e) failing to challenge the affidavit of probable cause; (f) failing to challenge the administrative search warrant; (g) failing to obtain and provide him with the drug lab report; and (h) allowing Petitioner to sign an "incomplete" plea agreement (D.I. 1 at 10; D.I. 3 at 11-15) (Claim 4); (5) the State violated his due process rights by switching prosecutors (D.I. 1 at 12; D.I. 3 at 16) (Claim 5(a)); (6) Petitioner's plea is invalid as a matter of contract law because the second prosecutor did not sign the form (D.I. 1 at 12; D.I. 3 at 16) (Claim 5(b)); and (7) the State withheld *Brady* material related to the investigation of misconduct that occurred with chemist Bipin Mody at the Division of Forensic Sciences ("DFS") and information regarding the fraud and/or misrepresentation of the State (D.I. 1 at 13-14; D.I. 1-1 at 20; D.I. 3 at 16; D.I. 12-2 at 3-4) (Claim 6).

## II. ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner does not assert, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D).[2] Consequently, the Court concludes that the one-year period of limitations began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

---

[2] To the extent the Court should construe Petitioner's assertion that the State failed to disclose information about a drug evidence scandal in the Office of the Chief Medical Examiner ("OCME") before he entered his guilty plea as an attempt to trigger a later starting date under § 2244(d)(1)(D), it is unavailing. The OCME drug evidence scandal – which occurred between 2010 and January 2014 – had been revealed and investigated before Petitioner was arrested in June 2015 and pled guilty in August 2015. As a result, the OCME drug evidence scandal does not constitute a newly discovered factual predicate for § 2244(d)(1)(D) purposes. In addition, Petitioner's drugs were tested by the Division of Forensic Services ("DFS") and not the OCME. Finally, the revelation of DFS chemist Bipin Mody's misconduct does not establish a new factual predicate underlying

3

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on October 19, 2015, and he did not appeal that judgment. Therefore, Petitioner's conviction became final on November 18, 2015. *See* Del. Supr. Ct. R. 6(a)(ii) (establishing a thirty day period for timely filing of notice of appeal). Applying the one-year limitations period to that date, Petitioner had until November 21, 2016 to timely file his Petition.[3] *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n.3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, did not file the instant Petition until March 2, 2018,[4] approximately one year and four months after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

---

Petitioner's *Brady* claim, because Mody did not handle or test the drugs in Petitioner's case.

[3] The one-year period actually expired on November 19, 2016, which was a Saturday. Therefore, the deadline extended through the end of the day on Monday, November 21, 2016. *See* Fed. R. Civ. P. 6(a)(3).

[4] The Petition is not dated. Applying the prisoner mailbox rule, the Court adopts March 2, 2018 as the filing date, because that is the postmark date on the envelope of mailing. (D.I. 1 at 18); *see Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

A.      **Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). An untimely post-conviction motion is not considered to be properly filed for § 2244(d)(2) purposes. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (explaining that a state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *Id.* at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

The one-year limitations period began to run in this case on November 19, 2015. When Petitioner filed his motion to modify sentence on January 11, 2016, fifty-three days of the limitations period had already expired. The Superior Court denied the motion to modify sentence on February 8, 2016, and Petitioner did not appeal that decision. As a result, the motion to modify tolled the limitations period from January, 2016 through March 9, 2016, the date on which the thirty-day deadline to appeal expired. The limitations clock started to run again on March 10, 2016, and ran 229 days until Petitioner properly filed a Rule 61 motion on October 25, 2016. The Superior Court denied the Rule 61 motion on May 18, 2017, and the Delaware Supreme Court affirmed that decision on October 12, 2017. In these circumstances, the Rule 61 motion tolled the

5

limitations period from October 25, 2016 through October 12, 2017. The limitations clock started to run on October 13, 2017, and ran the remaining eighty-three days of AEDPA's limitations period without interruption until it expired on January 4, 2018.

Consequently, even with the appropriate statutory tolling, the Petition is time-barred, unless equitable tolling applies.

### B.     Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013). Specifically, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon,* 322 F.3d 768, 773 (3d Cir. 2003). The burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights. *See Urcinoli v. Cathel,* 546 F.3d 269, 277 (3d Cir. 2008).

Petitioner does not address the untimeliness of his Petition and, therefore, does not assert that extraordinary circumstances prevented him from timely filing the instant Petition. To the extent Petitioner's vague contention that the State violated *Brady* by failing to inform him about the OCME evidence scandal should be construed as an attempt to trigger equitable tolling, it is unavailing.[5] The OCME evidence misconduct scandal predated Petitioner's arrest and guilty plea and, significantly, the drugs in his case were tested at the DFS and not at the OCME. In addition, the fact that DFS chemist Bipin Mody engaged in misconduct does not warrant equitable tolling, because Mody was not the forensic chemist who tested the drugs in Petitioner's case, and there is no evidence that Mody ever handled the dugs in this case. Rather, forensic chemist Melissa Newell tested the heroin. (D.I. 14-1). Finally, Petitioner first raised the issue of the OCME drug evidence scandal in his December 2016 amended Rule 61 motion. Yet, without explanation, Petitioner waited until March 2, 2018 to present his OCME argument in the instant Petition. Given these circumstances, Petitioner has failed to demonstrate that the State's alleged failure to inform him about the OCME drug evidence scandal or Mody's misconduct prevented him filing the instant Petition in a timely manner.

Relatedly, to the extent Petitioner's contention regarding his alleged lack of knowledge about the OCME evidence scandal is an attempt to demonstrate his "actual innocence" and circumvent the time-bar under the miscarriage of justice exception, the attempt is unavailing. In *McQuiggin v. Perkins*, the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period.

---

[5] Petitioner asserts that the plea "was the result of a *Brady* violation and the fraud and misrepresentation of the State, so the plea was not knowingly, voluntarily, and intelligently entered by Petitioner." (D.I. 3 at 16). In his Rule 61 appeal, Petitioner specifically stated knowledge about the OCME evidence scandal "would have been necessary to make an informed decision and develop a sound defense strategy." (D.I. 12-2 at 3). He also alleged that Bipin Mody's misconduct at the DFS constituted *Brady* material. (D.I. 12-2 at 3-5).

7

*McQuiggin v. Perkins*, 569 U.S. 383, 386, 401 (2013); *see also Satterfield v. Dist. Attorney of Phila*, 872 F.3d 152, 162 (3d Cir. 2017) ("*McQuiggin* allows a petitioner who makes a credible claim of actual innocence to pursue his or her constitutional claims even in spite of AEDPA's statute of limitations by utilizing the fundamental-miscarriage-of-justice exception."). The *McQuiggin* Court, however, cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, nothing in the Petition resembles new, reliable evidence that would support a claim that Petitioner is actually and factually innocent. As previously stated, the OCME evidence scandal predated Petitioner's guilty plea by more than year. Petitioner does not allege the substance in his case was not heroin, or that he did not commit the underlying acts supporting his conviction. Moreover, after his arrest, Petitioner confessed to possessing heroin, and he admitted his guilt to the charge of drug dealing in heroin during his plea colloquy. (D.I. 12-3 at 15; D.I. 12-4 at 2, 19). Consequently, Petitioner has not provided new reliable factual evidence of his actual innocence as required by *McQuiggin* and *Schlup*.

Finally, to the extent Petitioner's late filing was due to a lack of legal knowledge or miscalculation of the one-year filing period, such circumstances do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

8

For all these reasons, the Court concludes that equitable tolling is not available on the facts presented by Petitioner. Accordingly, the Court will dismiss the instant Petitioner as time-barred.[6]

### III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

### IV. CONCLUSION

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.

---

[6] Having determined that the Petition is time-barred, the Court will not address the State's alternative reasons for dismissing the Petition.